USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/11/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ROBERT A. SCHRAMM and GABRIELA
SAENZ,

                               Plaintiffs,

    -against-

THE CITY OF NEW YORK, et al.,

                               Defendants.
------------------------------------------------------------- X

**ORDER GRANTING SUMMARY JUDGMENT**

16 Civ. 553 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        This dispute arises out of a traffic stop conducted by New York City Police in the early hours of June 7, 2015. Plaintiffs were arrested at the stop for alcohol-related infractions and for obstruction of governmental administration, respectively. They contend that they were falsely arrested and that the traffic stop was designed and implemented in an unconstitutional manner. Defendants contend that they had at least arguable probable cause for the arrests, and that Supreme Court precedent allows sobriety checkpoints of the kind at issue here. After discovery, both parties moved for summary judgment. For the reasons that follow, Defendants' motion for summary judgment is granted, and Plaintiffs' is denied.

**Factual Background**

        Unless otherwise indicated, my recitation of the facts derives from the parties' statements submitted pursuant to Local Civil Rule 56.1.

A. The Sobriety Checkpoint

        On June 7, 2015, at around 1:30 a.m., plaintiff Robert Schramm was driving his car through New York City with two passengers: his wife, plaintiff Gabriela Saenz, and a friend, non-party James Farrell. Def. Rule 56.1 Statement, ECF No. 67, at ¶ 1; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 1. The trio was driving to Farrell's apartment in upper Manhattan, after a

"long day of socializing, which included buying wine, watching the Belmont Stakes horse race, and visiting various restaurants and bars." Def. Rule 56.1 Statement, ECF No. 67 at ¶¶ 2-3; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶¶ 2-3. Over the course of the day, Schramm had consumed both beer and sake. Def. Rule 56.1 Statement, ECF No. 67, at ¶ 4; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 4.

En route back to Farrell's apartment, Schramm's car was stopped at a sobriety checkpoint, which had been planned by defendant Noel Jugraj, a traffic sergeant. Def. Rule 56.1 Statement, ECF No. 67, at ¶¶ 5-6; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶¶ 5-6.[1] The checkpoint was marked by flashing lights. Def. Rule 56.1 Statement, ECF No. 67, at ¶ 8; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 8. At the checkpoint, the officers followed the procedure of stopping every car other than taxis and livery cars. Def. Rule 56.1 Statement, ECF No. 67, at ¶ 9; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 9.[2]

After Schramm's vehicle was stopped, an officer asked, and Schramm denied, having consumed alcohol that evening. Def. Rule 56.1 Statement, ECF No. 67, at ¶ 10; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 10. Schramm was then directed to pull his vehicle over to

---

[1] Plaintiffs protest that "it is unclear that the stop was a 'sobriety' checkpoint" because Defendants do not have a "written record" to substantiate the checkpoint's purpose. Pl. Response 56.1 Statement, ECF No. 73-1, at ¶ 5. However, Plaintiffs have not cited to any record evidence to support their implicit assertion that the checkpoint was designed to do anything other than identify impaired motorists. To the contrary, the record evidence leaves no room to doubt the intent of the traffic stop: multiple deponents testified that the stop was designed to ferret out drunk drivers, see Jugraj Dep., ECF No. 63-4, at 11:5-13; Aramboles Dep., ECF No. 63-5, at 17-20; a police memorandum produced by Defendants directs the execution of sobriety checkpoints in the New York City area, with no mention of checkpoints of other kinds, DWI Memorandum, ECF No. 69-5; and, perhaps most tellingly, Plaintiffs themselves testified that the only questions they were asked by the defendant officers in this case concerned whether Schramm had been drinking, see Schramm Dep., ECF No. 63-9, at 32:18-19; Saenz Dep., ECF No. 73-2, at 32:7-8. Rule 56.1(d) requires citation to evidence to controvert alleged facts, and Plaintiffs have failed to meet this requirement—as such, I find no genuine dispute that the checkpoint was a "sobriety checkpoint."

[2] Plaintiffs concede that the relevant testimony supports that this procedure was followed, but again "deny that this can be verified in the absence of checkpoint paperwork." Pl. 56.1 Response Statement, ECF No. 73-1, at ¶ 9. But Plaintiffs have not directed the Court to any authority mandating documentary evidence, nor, as above, see supra note 1, have Plaintiffs adduced any evidence in support of their contrary view.

the side of the street. Def. Rule 56.1 Statement, ECF No. 67, at ¶ 11; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 11.

Defendant Delacruz began to speak with Schramm through the driver's side window. Def. Rule 56.1 Statement, ECF No. 67, at ¶ 13; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 11. At his deposition, Delacruz testified that he "could smell the strong odor of alcohol on [Schramm's] breath" and that he observed Schramm to have "bloodshot eyes." Delacruz Dep., ECF No. 63-10, at 75:10-13. Plaintiffs concede that Schramm's eyes were red, but deny that he smelled of alcohol. Plaintiffs venture to support this assertion with a single sentence in plaintiff Saenz's affidavit that "None of us exhibited any symptoms or signs of impairment," Saenz Aff., ECF No. 63-3, at ¶ 4. Plaintiffs add that another officer who spoke with Schramm at the police station over three hours later did not make a written note of having smelled alcohol. Pina Dep., ECF No. 63-18, at 34:15-16. *See* Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 13.

Plaintiffs' conclusory denial, in the face of the conceded facts of Schramm's bloodshot eyes and his drinking throughout the day, is insufficient to raise a material issue of fact. It is undisputed that Schramm had been drinking, and that Saenz, at the time of the stop, had a flask "completely full" of alcohol in her purse. *See* Saenz Dep., ECF No. 73-2, at 28:22-29:8. And the fact that an officer did not specifically record having smelled alcohol on Schramm several hours after the stop is not responsive to a different officer having smelled alcohol earlier on. "[U]nsubstantiated opinions in a Local Rule 56.1 statement" do not raise an issue of fact. *Congregation Rabbinical College of Tartikov, Inc. v. Vill. Of Pomona*, 138 F.Supp.3d 352, 394 (S.D.N.Y. Sept. 29, 2015); *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation marks omitted).

### B. The Arrests

One of the officers at the stop instructed Schramm to exit his vehicle and to take a portable alcohol breath test. Def. 56.1 Statement, ECF No. 67, at ¶ 14; Pl. Resp. 56.1 Statement,

3

at ¶ 14. Schramm replied that he "would rather not perform the portable breath test." Schramm Dep., ECF No. 63-9, at 43:9-44:4. Another officer came by; Schramm turned away to speak to his passengers and rolled up his window so that it was at most "open a crack." *Id.* at 55:18-56:3.

The officers told Schramm that if he did not come out, they would "com[e] in," and began counting down from five. *Id.* at 56:24-57:2; *see* Def. 56.1 Statement, ECF No. 67, at ¶ 18. Schramm then unlocked his door and exited the car. Def. 56.1 Statement, ECF No. 67, at ¶ 18; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 18. After Schramm did so, Delacruz asked him repeatedly to take the portable alcohol breath test. Schramm refused, stating that he preferred not to and believed he did not have to. Def. 56.1 Statement, ECF No. 67, at ¶ 19; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 19; Schramm Dep., ECF No. 63-9, at 65:9-11 ("[I]t was . . . not my wish to take the breath test."). Delacruz then gave Schramm a ticket and he and Sergeant Jugraj arrested him for driving while impaired. Def. 56.1 Statement, ECF No. 67, at ¶ 22, 24; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 22, 24.

Plaintiffs Saenz and Farrell, the passengers in Schramm's car, also exited the car. Def. 56.1 Statement, ECF No. 67, at ¶ 25; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 25. Jugraj instructed them to step back, but Saenz refused, responding that she would not leave. Def. 56.1 Statement, ECF No. 67, at ¶ 27; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 27. After refusing several requests to leave the area, Saenz was arrested. Def. 56.1 Statement, ECF No. 67, at ¶ 28; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 28.

Saenz conceded at her deposition that she was warned by officers that if she did not leave the area she would be arrested for obstruction of justice. She replied to this directive, "no . . . . I'm going to stay with my husband." Saenz Dep., ECF No. 69-3, at 49:4-11. Farrell testified similarly that Saenz disregarded an instruction to "step back." Farrell Dep., ECF No. 69-7, at 51:13-23. Jugraj testified that Saenz was inebriated, "belligerent towards my officers and myself," ignored an instruction to step away from the area and "put[] her hands on me,"

4

"pushing me to get to Mr. Schramm." Jugraj Dep., ECF No. 63-4, at 65:18-67:13. Delacruz testified similarly, that Saenz physically interfered with the officers' arrest of Schramm. Delacruz Dep., ECF No. 63-10, at 91:24-92:8.

C. Post-Arrest

Following his arrest, Schramm was brought to the 28th Precinct. Def. 56.1 Statement, ECF No. 67, at ¶ 32; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 32. At 4:41 a.m., he was given a sobriety breath test, which showed, three hours after the traffic stop, a blood alcohol concentration ("BAC") of .034.[3] Def. 56.1 Statement, ECF No. 67, at ¶¶ 33-34; Pl. Resp. 56.1 Statement, ECF No. 73, at ¶¶ 33-34; Schramm Test Results, ECF No. 69-11.

The New York County District Attorney's Office declined to prosecute Schramm. Def. 56.1 Statement, ECF No. 67, at ¶ 36; Pl. Resp. 56.1 Statement, at ¶ 36; District Attorney Declination of Prosecution, ECF No. 69-13. As to Saenz, she accepted an adjournment in contemplation of dismissal. Def. 56.1 Statement, ECF No. 67, at ¶ 38; Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 38.

**Procedural Background**

Plaintiffs' First Amended Complaint (the "Complaint"), filed on February 9, 2017, brings claims for (1) false arrest and wrongful imprisonment without probable cause, in violation of the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (2) malicious prosecution; (3) establishing a checkpoint that did not comport with the requirements of the Fourth Amendment; (4) deprivation of procedural due process in violation of the Fifth and Fourteenth Amendments and § 1983; and (5) municipal liability, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See* ECF No. 24. Plaintiffs have since voluntarily dismissed claims

---

[3] Under N.Y. V.T.L. § 1192(2), one who operates a motor vehicle with a BAC of .08 or more is *per se* guilty of driving while intoxicated.

5

(2) and (4), *i.e.*, their malicious prosecution and procedural due process claims.[4] *See* ECF No. 61, 74 at 28. In August 2019, after discovery, both parties moved for summary judgment. *See* ECF Nos. 62, 66.

## Discussion

Summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a motion for summary judgment "construes the evidence in the light most favorable to the non-moving party," and "draw[s] all reasonable inferences in its favor." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). The nonmovant "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (italics in original) (quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### A. False Arrest

A claim of false arrest "based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest." *Kent v. Katz*, 312 F.3d 568, 573 (2d Cir. 2002). "Probable cause to arrest exists when the officers have knowledge of . . . facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). The Supreme Court has explained:

> Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a practical, nontechnical conception. In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not

---

[4] The procedural due process claim was withdrawn during the briefing of the summary judgment motions. *See* Pl. Opp. Mem., ECF No. 74, at 28.

6

technical; they are the factual and practical considerations of everyday life on
which reasonable and prudent men, not legal technicians, act.

*Illinois v. Gates*, 462 U.S. 213, 231 (1983) (citations and quotation marks omitted).

An officer has qualified immunity against a claim of false arrest if it was "objectively reasonable for [him] to believe that his action did not violate" clearly established law. *Kent*, 312 F.3d at 573. Since "the principle that a warrantless arrest without probable cause violates the Fourth Amendment was clearly established" prior to the arrests here, the question is whether "it was objectively reasonable" for Defendants to believe they "had probable cause." *Id.* The "objective reasonableness test is met if officers of reasonable competence could disagree on the legality of the defendant's actions." *Id.* (quotation marks omitted). "The Supreme Court has made it clear that an officer's actions are not to be assessed with 20/20 hindsight." *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996); *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) ("[I]n situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.").

*1. Schramm*

Schramm was arrested for, *inter alia*, operating a motor vehicle while under the influence of alcohol or drugs, in violation of New York Vehicle and Traffic Law § 1192(1).[5] *See* Schramm Arrest Report, ECF No. 69-1.[6] Section 1192(1) provides that "[n]o person shall

---

[5] Because I find that there was probable cause to arrest Schramm for violating N.Y. V.T.L. § 1192(1), I do not reach, and make no findings on, whether probable cause existed for the other violations listed on Schramm's arrest report.

[6] Plaintiffs' response to Defendants' 56.1 statement "den[ies] that Schramm was arrested for driving while ability impaired," because "Delacruz testified that he arrested Schramm 'for suspicion of DWI.'" Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 24. This is an odd and ineffectual quibble. For one thing, it is not at all clear how an arrest for suspicion of driving under the influence differs from an arrest for driving under the influence. For another, the arrest report plainly includes a violation of N.Y. V.T.L. § 1192(1). Finally, and most important, this Circuit's law is clear that probable cause for *any* offense, even one not identified by the arresting officer, will defeat a claim for false arrest. *See, e.g., Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest—even for a crime other than the one identified by the arresting officer—will defeat a claim of false arrest . . .").

7

operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol." The "degree of proof necessary to support an arrest for driving while impaired is far less rigorous than that required for driving while intoxicated." *Hoyos v. City of New York*, 999 F.Supp.2d 375, 387 (E.D.N.Y. 2013) (quotation marks omitted). For probable cause to exist, "an objectively reasonable officer must have been warranted in the belief that, at a minimum, [the arrestee] had operated a motor vehicle while his ability to do so as a reasonable and prudent driver was impaired by the consumption of alcohol." *Id.*

    The agreed-upon facts of the instant case clearly show that there was probable cause to arrest Schramm. After consuming several drinks throughout the day and into the evening, Schramm arrived at a sobriety checkpoint where he was observed with bloodshot eyes and smelling of alcohol. When asked by an officer whether he had consumed any alcohol that night, Schramm falsely stated that he had not. And when Schramm was asked by an officer to step out of the car so that a sobriety test could be administered, Schramm said he did not want to take any such test, turned away from the officer to confer with his passengers, and rolled up his window to the point where it was open only a crack. An officer of reasonable caution would be entitled to find the physical indicia of inebriation—the bloodshot eyes and smell of alcohol—combined with the suspiciously evasive behavior—the falsely denying not having imbibed alcohol and the rolling up the window in response to the officer asking Schramm to complete a sobriety test—to support probable cause for an arrest under N.Y. V.T.L. § 1192(1). And even assuming that Defendants lacked probable cause for the arrest, they surely are owed qualified immunity, for there was at least "arguable probable cause," *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).[7]

---

[7] Plaintiffs note in their briefing that Schramm's BAC when he was tested, .034, was less than the .08 BAC threshold that triggers a *per se* finding of driving while intoxicated, *see* N.Y. V.T.L. § 1192(2). But this test reflected his condition more than three hours after he was stopped. According to the "DWI Detection and Standardized Field Sobriety Testing" manual published by the National Highway Transportation Safety

8

Plaintiffs' reliance on *Kent v. Katz*, for a contrary result is misplaced. In *Kent*, the arresting officer knew that Dean Kent, the arrestee, had been burning brush on his property for 18 days, accounting for his red eyes. Nevertheless, the officer, with no further basis other than Kent's red eyes and the fact that Kent had responded to the officer's question as to whether Kent had been drinking, "not very much," arrested Kent for driving under the influence. The Second Circuit held that the officer did not have probable cause for the stop. *See* 312 F.3d at 576.

A number of critical facts distinguish the instant case from *Kent*. First, while Plaintiffs contend that Schramm's eyes were red due to recent eye surgery, *see* Pl. Resp. 56.1 Statement, ECF No. 73-1, at ¶ 13, there is no evidence that the arresting officer, Delacruz, knew this.[8] Second, unlike Kent, Schramm denied that he had been drinking when the evidence of his drinking was readily observable. Third, Schramm behaved evasively in turning away from the inquiring officer and rolling up his window. One cannot say that Delacruz did not have at least arguable probable cause for this arrest.

### 2. Saenz

Saenz was arrested for obstructing governmental administration, in violation of section 195.05 of New York Penal Law. Saenz Arrest Report, ECF No. 69-8. Section 195.05 provides in relevant part that one "is guilty of obstructing government administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference." An officer "has probable cause to

---

Administration, cited by Plaintiffs, *see* Pl. Mem., ECF No. 64, at 12, the average person metabolizes alcohol at rate of .015 per hour. That rate yields a concentration level three hours earlier of approximately .079. A level just .001 underneath that would be basis for a *per se* finding of driving while intoxicated.

[8] Plaintiffs contend that "Delacruz knew that" Schramm had undergone recent eye surgery. Pl. Opp. Mem., ECF No. 74, at 21. This is wrong. To support their claim, Plaintiffs cite deposition testimony from another officer, one Ramon Pina, who learned from Schramm well after his arrest, and recorded in his paperwork, that Schramm recently had laser eye surgery. Pina Dep., ECF No. 63-18, at 31:19-32:6. This testimony is not relevant to what Delacruz knew at the time of the arrest.

9

arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer." *Johnson v. City of New York*, No. 05-cv-7519, 2008 WL 4450270, at *10 (S.D.N.Y. Sept. 29, 2008); *see also Wilder v. Village of Amityville*, 288 F.Supp.2d 341, 344-45 ("It is undisputed that Plaintiff failed to move after being ordered to do so"; "Findings of probable cause to violate § 195.05 may be predicated upon, for example, a defendant's refusal to obey orders to leave a premises, . . . to step back from an accident scene or to keep away from an area where a disturbance is taking place") (quotation marks omitted); *Allen v. City of New York*, 480 F.Supp.2d 689, 711 (S.D.N.Y. 2007); *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995).

        The parties agree that Saenz was instructed several times to step away from the scene of Schramm's arrest,[9] and refused to do so. Her refusal to step away obstructed the police officers from carrying out their lawful duty to implement a sobriety checkpoint, in violation of § 195.05. "The events leading up to the arrest, . . . viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Marcavage v. City of New York*, No. 05-cv-4949, 2010 WL 3910355, at *9 (S.D.N.Y. Sept. 29, 2010), *aff'd* 689 F.3d 98 (2d Cir. 2012) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)); *Kent*, 312 F.3d at 573 (qualified immunity turns on what was "objectively reasonable"). What's more, there was at least arguable probable cause. At a minimum, "officers of reasonable competence could disagree on the legality" of ordering Schramm to step away from her husband's arrest, to avoid an already tense situation from escalating further.

* * * * *

---

[9] Saenz argues that Sergeant Jugraj ordered her to "leave," not "step back." *See* Pl. Resp. 56.1 Statement, ECF No. 67, at ¶¶ 29-30; Pl. Opp. Mem., ECF No. 74, at 25-26. The difference is not a legal distinction. Indeed, Farrell, the second passenger, testified that an "officer first told us to step back," and that Saenz "did not step back as we were instructed." Farrell Dep., ECF No. 69-7, at 51:13-23.

10

Defendants' motion for summary judgment on Schramm's and Saenz's claims for false arrest is granted.

B. Sobriety Checkpoint

In *Michigan Department of State Police v. Sitz*, the Supreme Court held that checkpoints used to check drivers briefly for signs of intoxication comport with the requirements of the Fourth Amendment. *See* 496 U.S. 447, 447 (1990). Interpreting *Sitz*, this Circuit noted:

> The *Sitz* Court explained that a motor vehicle checkpoint's reasonableness, and thus its constitutionality, is determined by evaluating and balancing three broad factors—the magnitude of the State's interest in operating the checkpoint, the intrusion inflicted upon motorists by the operation of the checkpoint, and the degree to which the operation of the checkpoint (the seizure) advances the State's interest, also referred to as "effectiveness."

*Mollica v. Volker*, 229 F.3d 366, 370 (2d Cir. 2000).

The checkpoint here was constitutional. The purpose of the checkpoint was to identify drunk drivers. "No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Sitz*, 496 U.S. at 451. The stop here was not a "roving patrol stop,"—which the *Sitz* Court indicated might lead to subjective intrusion on drivers by approaching lone motorists on "seldom-traveled roads"—but rather a checkpoint at which approaching motorists could see "that other vehicles are being stopped," see "visible signs of the officers' authority," see flashing lights to mark the checkpoint, and wherein drivers were stopped according to a uniform, non-discriminatory, practice of halting all vehicles aside from taxi cabs. *Id.* at 453 (quotation marks omitted).[10] And last, the effectiveness of the checkpoint is reflected in the fact that, on June 7, 2015, the night Plaintiffs were arrested, the checkpoint

---

[10] At his deposition, Sergeant Jugraj explained that his decision to impose a policy that included not stopping taxis derived from the view that, *inter alia*, taxi drivers would be less likely to be drinking on the job than persons who had been out at bars. *See* Jugraj Dep., ECF No. 69-4, at 15:15-25. *See, e.g., Mollica*, 229 F.3d at 366 ("*Sitz* emphasized the need to defer to governmental officials' decisions regarding resource allocation in evaluating the efficacy of a checkpoint.").

11

resulted in the arrest of two other drivers whose breath test results indicated that these drivers had been drinking excessively. *See* DWI Initiative Arrest Report, ECF No. 76-4; *Sitz*, 496 U.S. at 453 (the 'effectiveness inquiry' is "not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger."); *Maxwell v. City of New York*, 102 F.3d 664, 667 (2d Cir. 1996) (effectiveness is shown if, "at the time of implementation, the checkpoints were reasonably viewed as an effective mechanism to deter criminal behavior . . . ").

Plaintiffs, largely without citations to the record, argue that Defendants run afoul of *Sitz* by not providing enough information on why the checkpoint was put in place, and by failing to possess several characteristics specified by Plaintiffs. *See, e.g.*, Pl. Opp. Mem., ECF No. 74, at 16 ("They offer no facts as to how the NYPD checkpoint policy was established."); *id.* at 17 (claiming officers do not receive sufficient "training or experience in field sobriety tests"); *id.* at 18 (claiming that it is not enough for "commanding officer[s]" to select the checkpoint locations). *Sitz*, however, does not impose any of the requirements outlined in Plaintiffs' briefs as necessary conditions of a constitutional stop. And, in fact, *Sitz* makes clear that judges are not to second-guess the legislature's policy decisions as to sobriety checkpoints, so long as these decisions lie within constitutional bounds. *See Sitz*, 496 U.S. at 453.

Indeed, Plaintiffs do not point to a *single* authority[11] to support their argument that the checkpoint was constitutionally required to be structured in the manner they describe in their

---

[11] Plaintiff cites to *In the Matter of Muhammad F.*, 94 N.Y.2d 136, 148 (1999), and urges that a comparison between that case and the checkpoint at issue in this case "is striking," Pl. Opp. Mem., ECF No. 74, at 18. The comparison is not striking, nor even remotely apt. *Muhammad F.* involved motions to suppress evidence obtained through roving patrols of plain clothes police officers in unmarked cars who, as a policy, stopped a certain percentage of taxi drivers "to provide a 'safety check,'" *i.e.*, evaluate whether any dangerous activity was taking place. *See* 94 N.Y.2d at 140. These 'safety checks' involved "question[ing] the cab driver as to his safety, while at the same time watching the reaction of the passengers," and "search[ing] around and under the seats." *Id.* The New York Court of Appeals found this approach unconstitutional, noting, *inter alia*, that there was no "evidence that the operation of a stationary checkpoint by uniformed officers in marked police cars was impractical" and that there was nothing in the record to explain how officers chose which cars to stop. *Id.* at 147-48 (quotation marks omitted). By contrast, the checkpoint here was stationary, marked by flashing lights,

12

briefing.[12] Thus, at a minimum, Defendants are entitled to qualified immunity. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 ("If the law at th[e] time was not clearly established, an official could not . . . fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."); *cf.* Tyler Finn, Note, *Qualified Immunity Formalism: "Clearly Established Law" and the Right to Record Police Activity*, 119 Colum. L. Rev. 445, 486 (2019) (advocating for a *narrower* conception of qualified immunity doctrine that would require, at least, demonstration of a "robust consensus of persuasive authority").

In sum, Defendants' motion for summary judgment on Plaintiffs' claim of an unconstitutional traffic stop is granted.

C. Municipal Liability

In order to state a claim for municipal liability under *Monell*, 436 U.S. 658, the claimant must identify an "independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see id.* ("Because the district court properly found no underlying constitutional violation, its decision not to address . . . defendants' liability under *Monell* was entirely correct."). For the reasons stated *supra*, Plaintiffs have not made out any valid claims of unconstitutionality on the part of Defendants. Accordingly, summary judgment on Plaintiffs' *Monell* claim is granted.

---

manned by uniformed officers, designed to stop every car but for taxis, and not geared toward the type of unguided general crime prevention the *Muhammad F.* court faced.

[12] Plaintiffs describe an "Ideal Checkpoint Policy." They argue, *inter alia*, that checkpoints should be established in Queens County, "where the problem is worst," not Manhattan "where it is nearly non-existent." Pl. Mem., ECF No. 64, at 38-39. I note that Plaintiffs' own statistical review leads them to the conclusion that Manhattan, like everywhere else, is subject to motor vehicle injuries and deaths, *see id.* at 21-22.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted and Plaintiffs' motion for partial summary judgment is denied. The Clerk will terminate the motions (ECF Nos. 62, 65, 66), and mark the case closed.

SO ORDERED.

Dated: December 1, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge